**WO**

NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

<table>
<tr><td>TAJUDEEN O. OLADIRAN; <em>et al.</em>,</td><td>)</td><td>No. CV-09-01471-PHX-GMS</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Plaintiffs,</td><td>)</td><td><strong>ORDER</strong></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>vs.</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>SUNTRUST MORTGAGE, INC.; <em>et al.</em>,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Defendants.</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
</table>

The Rules of Practice of the United States District Court for the District of Arizona ("Local Rules") provide:

> Any attorney admitted or otherwise authorized to practice before this Court may be disbarred, disciplined, or have the order of appointment revoked after such hearing as the Court may in each particular instance direct.

LRCiv. 83.2(a). During the course of presiding over *Tajudeen O. Oladiran v. SunTrust Mortgage, Inc.*, No. 2:09-CV-01472–GMS, the Court has become aware of circumstances suggesting that Mr. Oladiran may be engaging in a persistent course of conduct that violates "The Rules of Professional Conduct," in the Rules of the Supreme Court of the State of Arizona. As Local Rule 83.2 further provides, Arizona's Rules of Professional Conduct, "shall apply to attorneys admitted or otherwise authorized to practice before the United States District Court for the District of Arizona." LRCiv. 83.2(e).

Therefore, pursuant to the authority provided in Local Rule 83.2(a), this Order sets forth the reasons it has to believe that Mr. Oladiran has violated these Rules. This Order then

directs the Clerk of the Court to set up a separate proceeding, with a miscellaneous case number, to be randomly assigned to a Judge of this Court other than Judge Susan R. Bolton, Judge Mary H. Murguia, Judge G. Murray Snow, Judge Lawrence O. Anderson, or Judge John W. Sedwick. The purpose of establishing this miscellaneous and separate case is to transfer this Order to Show Cause to that case and allow the assigned judge to determine, after an appropriate hearing, whether Mr. Oladiran has violated the Rules of Professional Conduct and whether any such violations should result in his being "disbarred" from this Court, or otherwise "disciplined." *See* LRCiv. 83.2(a).

**DISCUSSION**

Mr. Oladiran has engaged in the following behavior, which indicates that he may have violated the Rules of Professional Conduct:

**I.     Mr. Oladiran's "Motion for a [sic] Honest and Honorable Court System"**

On October 1, 2009, Mr. Oladiran filed with this Court a "Motion for a [sic] Honest and Honorable Court System," attached to this Order as Exhibit A. (*See* Dkt. # 48.) In that Motion, which was filed when this case was pending before Judge Bolton, Mr. Oladiran stated that Judge Bolton was "dishonorable" and a "brainless coward." (*Id.* at 1–2.) Mr. Oladiran then used language in his Motion that appeared not only to suggest his own suicide, but also to threaten Judge Bolton: "To my family, words can't express my apologies; please remember me kindly. Finally, to Susan Bolton, we shall meet again you know where." (*Id.* at 2.) This necessitated a visit to Mr. Oladiran's home by the United States Marshals Service and ultimately resulted in Judge Bolton's recusal from this action, after which it was reassigned to the undersigned. In the visit by the United States Marshals Service, Mr. Oladiran stated that Judge Bolton was a "coward,"and he alleged that she was "cooperating" with large institutional banks to prejudice the Oladirans' case. He also stated the he knew how the game was played and that his Motion was part of that game.

Mr. Oladiran's Motion implicates several of Arizona's Rules of Professional Conduct. First, under Ethics Rule ("ER") 3.1, it does not appear that Mr. Oladiran had a "good faith basis in law and fact" for filing this Motion. *See* Ariz. R. Sup. Ct. 42, ER 3.1 (Meritorious

Claims and Contentions). This Motion also implicates Mr. Oladiran's ethical obligations under ER 3.5(d), which instructs that "a lawyer shall not . . . engage in conduct likely to disrupt a tribunal." *See* ER 3.5(d) (Impartiality and Decorum of the Tribunal). Because it appears that the Motion had "no substantial purpose other than to embarrass, delay, or burden" another person, Mr. Oladiran's Motion also appears to violate ER 4.4. *See* ER 4.4(a) (Respect for Rights of Others). Similarly, the specific statements about Judge Bolton appear to violate ER 8.2(a), which provides that "[a] lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge." *See* ER 8.2(a) (Judicial and Legal Officials). By filing this Motion, Mr. Oladiran also may have violated ER 8.4 which provides, "It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice." *See* ER 8.4(d) (Misconduct). That Mr. Oladiran was representing himself in this matter is of no consequence. *See In re Sibley*, 564 F.3d 1335, 1339 (D.C. Cir. 2009) (suspending an attorney, who committed ethical violations in the course of representing himself); *see also Santa Clara County Counsel Attys. Assn. v. Woodside*, 869 P.2d 1142, 1157 (Cal. 1994) ("An attorney, in pursuing rights of self-representation, may not use delaying tactics in handling existing litigation or other matters of representation for the purpose of gaining advantage in a dispute.").

## II.    Mr. Oladiran's Lawsuit Against Judge Bolton and the Undersigned

Shortly after the case was reassigned from Judge Bolton to the undersigned, Mr. Oladiran filed a separate lawsuit against Judge Bolton and the undersigned, alleging that they conspired to violate the Oladirans' civil rights. *See Oladiran v. Bolton*, No. 2:09-CV-02633–JWS (D. Ariz. Jan. 12, 2010); *see also* Dkt. # 53. Mr. Oladiran also requested in that lawsuit that the undersigned be removed from the SunTrust case. Shortly after Mr. Oladiran filed suit, Judge Sedwick dismissed the claims *sua sponte* based on the doctrine of judicial immunity. In dismissing the case, Judge Sedwick observed,

> In eighteen years on the bench, this judge has seen a number of lawsuits like this one which were foreclosed by the doctrine of judicial immunity. However, every one of them was filed by a

> party proceeding pro se. Mr. Oladiran is the first lawyer who has ever filed such a lawsuit which has been assigned to this judge. Accordingly, pursuant to Rule 11(c)(3), the court will require Mr. Oladiran to show cause why the court should not impose a $500 sanction upon him for filing a complaint containing claims that could not possibly succeed in light of the doctrine of judicial immunity and for asking this district court to intervene in an another on-going district court case.

*Bolton*, No. 2:09-CV-02633–JWS, at *6. Judge Sedwick's Order is attached as Exhibit B.

At the time that Mr. Oladiran filed suit, Judge Bolton had not issued ruling on the merits of this case, but had set a discovery schedule to expedite the Oladirans' request for a preliminary injunction and then vacated that schedule when it became clear that an immediate injunction was no longer necessary. (*See* Dkt. # 46.) Likewise, the undersigned had not rendered any substantive ruling in the instant case when Mr. Oladiran filed suit, the Court had merely ordered Mr. Oladiran to respond to a motion to dismiss that had been pending for over two months. (*See* Dkt. # 53.) Given that Mr. Oladiran's separate lawsuit was dismissed as being without merit, and that neither Judge Bolton nor the undersigned had rendered any substantive ruling on the merits of the Oladirans' claims in the instant case when he filed suit, it appears that the lawsuit against Judge Bolton and the undersigned may have "no substantial purpose other than to embarrass, delay, or burden" this litigation. *See* ER Ariz. R. Sup. Ct. 42, 4.4(a) (Respect for Rights of Others). Indeed, under ER 3.1, Mr. Oladiran does not appear to have a "good faith basis in law and fact" for filing the lawsuit against these Judges. *See* ER 3.1. And, because Mr. Oladiran requested that the undersigned be removed from presiding over the SunTrust case before any substantive decision was rendered in that case, Mr. Oladiran's request may be in violation of ER 8.4 which provides that "[i]t is professional misconduct for a lawyer to . . . file a notice of change of judge . . . for an improper purpose, such as obtaining a trial delay." *See* ER 8.4(g) (Misconduct).

**III.    The *Glendale* Case and Mr. Oladiran's Lawsuit Against Judge Murguia and Judge Anderson**

In another recent case, *Charles Okonkwo v. Glendale Union High School*, No. 2:08-CV-0633-MHM (D. Ariz. Feb. 25, 2010), which is attached as Exhibit C, Mr. Oladiran engaged in a course of conduct similar to that of the instant case. In the *Glendale* case, Mr.

- 4 -

Oladiran took several deliberate actions, on behalf of his client, Charles Okonkwo, which appear to have been designed to delay those proceedings. For instance, Mr. Oladiran filed multiple motions in the *Glendale* case to obtain discovery extensions. *Id.* at *2. And, though a thirty-day extension was granted, Judge Murguia noted that there was nothing in the record suggesting that Mr. Oladiran ever attempted to conduct additional discovery. *Id.* Mr. Oladiran also filed a motion to disqualify Judge Murguia, which was denied as meritless. *Id.* at *3. After Judge Murguia ordered Mr. Oladiran to file a response to the *Glendale* Defendants' then-pending Motion for Summary Judgment, Mr. Oladiran indicated that he had no intention of complying with the Court's orders: "Counsel for Plaintiff WILL NOT comply with the Murguia 2/4/10 Order, and WILL NOT file any response on behalf of Plaintiff to Defendants' Motion for Summary Judgment." *Id.* at 4. True to his word, Mr. Oladiran never filed any response. *Id.* When Judge Murguia finally dismissed the *Glendale* case, she observed, "The delay in this case since November 25, 2009 is solely attributable to Mr. Oladiran's inability to file a responsive brief and his refusal to follow the Court's clear instructions." *Id.* at 6.

Moreover, while the *Glendale* case was still pending, Mr. Oladiran brought another lawsuit, again on behalf of Okonkwo, alleging that Judges Murguia and Anderson conspired with opposing counsel to violate Okonkwo's civil rights in the *Glendale* case. *See Okonkwo v. Murguia*, 2:09-CV-02604–JWS, 2010 WL 276754 (D. Ariz. Jan. 19, 2010). In the lawsuit against Judges Murguia and Anderson, Mr. Oladiran argued that Judge Murguia prejudiced the client's case by mandating a settlement conference before Judge Anderson and by allowing Judge Anderson to impose sanctions against Okonkwo. *Id.* at *1. All of the claims against Judges Anderson and Murguia were dismissed *sua sponte* based on the doctrine of judicial immunity. In dismissing the case, Judge Sedwick stated, "Mr. Oladiran is the only lawyer this court has ever seen file a lawsuit like this one which includes claims which are foreclosed by the doctrine of judicial immunity, such claims being ordinarily seen only in cases filed by inexperienced pro se litigants." *Id.* at *4. Judge Sedwick's Order is attached as Exhibit D.

Mr. Oladiran's conduct during the *Glendale* case and the subsequent lawsuit against Judges Murguia and Anderson may have been calculated to prolong and delay the proceedings in the *Glendale* case. Such conduct may therefore be in violation of ER 4.4 and ER 8.4, which prohibits a lawyer from taking actions that have "no substantial purpose other than to embarrass, delay, or burden" another person or to interfere with the "administration of justice." *See* Ariz. R. Sup.Ct. 42, ER 4.4(a) (Respect for Rights of Others); ER 8.4(d) (Misconduct). By refusing to comply with Judge Murguia's orders and by filing the apparently meritless lawsuit against Judges Murguia and Anderson, Mr. Oladiran has also called into question his ability to provide both "competent" and "reasonabl[y] diligen[t]" representation to a client under ER 1.1 and ER 1.3. *See* ER 1.1 (Competence); ER 1.3 (Dilligence). And, like the lawsuit against Judge Bolton and the undersigned, it appears that Mr. Oladiran did not have "good faith basis in law and fact" for filing suit against Judge Murguia and Anderson as the doctrine of judicial immunity clearly barred that claim. *See* ER 3.1 (Meritorious Claims and Contentions).

**IV.    Mr. Oladiran's Possible Threats to Co-Counsel**

Finally, on January 25, 2010, the Court set a scheduling conference for the SunTrust case and ordered the parties to prepare a Joint Case Management Report. (Dkt. # 59.) Although the parties met to discuss the preparation of a joint report, Mr. Oladiran declined to participate in the submission of a joint report to the Court. After SunTrust filed its Case Management Report (Dkt. # 64), Mr. Oladiran filed a Clarification to that Report (Dkt. # 65). In the Clarification, Mr. Oladiran made clear that he intends: (1) to file a motion to disqualify the Court; (2) to file a Complaint against counsel for SunTrust; (3) to file a further Complaint against a secret SunTrust attorney, John Clemency, Esq. and his law firm;[1] (4) to amend the present Complaint based on new precedent from another District Court; and (5) to consolidate the lawsuit against Judges Bolton and Snow with the instant case. (*Id.*)

---

[1]Mr. Clemency had apparently been a mediator that sought earlier to assist in the resolution of this suit by the Oladirans against SunTrust Mortgage, Inc.

Thereafter, the attorney for SunTrust, Folks & O'Connor ("Folks"), telephoned the Court seeking permission to attend the Case Management Conference telephonically because she felt threatened by Mr. Oladiran. After consultation with Court staff, counsel was advised that the Court would not entertain *ex parte* oral motions, but any motion would have to be filed with the Court and Mr. Oladiran so as to provide him with an opportunity to respond. Counsel for SunTrust thereafter filed a written motion requesting to appear telephonically, describing the reason for the request as "unexpected circumstances." (Dkt. # 71.)

Before the Court ruled on the motion to appear telephonically, however, the Court had contact with the United States Marshals Service. Counsel from Folks had provided the Marshal with a string of her email communications with Mr. Oladiran, attached as Exhibit E. In that email string, Mr. Oladiran requested any information that would assist him in asserting claims against Mr. Clemency for being involved in a conspiracy with SunTrust. According to that email string, once Folks' Counsel denied having any information of the type sought by Mr. Oladiran, Mr. Oladiran replied, "I do not believe you but, since you are all willing to join in the lie, we move on. However, in the name of Allah, I assure you that if you continue to play Russian roulette with me, sooner or later, you will all lose, InsaAllah." (*See* Ex. D.) Counsel also indicated to the U.S. Marshal that Mr. Oladiran had been threatening her with lawsuits, complaints, bad press, and had even made physical threats. After a follow-up interview with Mr. Oladiran about what may have been a veiled threat, the Marshal indicated to the Court that Mr. Oladiran denied making any threat to the attorney from Folks.

In his February 25, 2010 response to the motion to appear telephonically, Mr. Oladiran again denied making threats to Folks' Counsel; instead, he called Counsel's concern for her physical safety "comical." (Dkt. # 73, attached as Exhibit F.) Mr. Oladiran then attached a series of emails to his response. In one of those emails, addressed to Mr. Clemency, Mr. Oladiran states the following:

> You and Mr. Folks (Suntrust) conspire to destroy me, at the same time <u>you</u> pretend to be my friend. **May Allah judge you and punish you with extreme prejudice.** I have tried to end

> this case even though I knew of the corruption surrounding me;
> however, you and your co-conspirators will not leave me alone
> or let me leave or live. I repeat again: **I do not fear any of you
> and your purchased help**; I will fight until Allah gives me
> victory, even if it takes the rest of my life.

(*Id.* at Ex. 1 (emphasis in original). Finally, in his response to the motion to appear telephonically, Mr. Oladiran stated, "[T]his action will not always be adjudicated by Judges, Bolton, Snow, or Sedwick." The response then implies that those Judges have inappropriately "helped" SunTrust. Specifically, it states that SunTrust need not fear consequences for their allegedly inappropriate actions because "whatever Suntrust [sic] wants in this action, Suntrust [sic] gets." (*id.* at 4.) Mr. Oladiran further accuses the undersigned of presenting a "biased rendition of the 'facts'" in the Court's Order pertaining to Suntrust's motion to appear telephonically. (*Id.* at 5.) Shortly after filing this response, Mr. Oladiran filed a Motion to Recuse the undersigned from the instant case, alleging that the undersigned should recuse himself from these proceedings, *nunc pro tunc* to December 21, 2009—before the Court issued any rulings on the merits of this case . (Dkt. # 76.) Mr. Oladiran also alleges in the Motion to Recuse that the undersigned "has a personal bias or prejudice concerning" the Oladirans. (*Id.* at 5.)

Mr. Oladiran's comments to opposing counsel further implicate his ethical obligations. To the extent that his comments constitute a threat, he may have committed a "act that reflects adversely on" his "fitness as a lawyer." *See* ER 8.4(b) (Misconduct); *see also* ER 3.4 (Fairness to Opposing Party and Counsel); ER 3.5 (Impartiality and Decorum of the Tribunal). His comments to counsel also suggest an intent to delay the proceedings in this case. *See* Ariz. R. Sup.Ct. 42, ER 4.4 (Respect for Rights of Others). Finally, Mr. Oladiran's statement that SunTrust gets "whatever [it] wants in this action" and his accusations of "bias" implicate ER 8.2(a), which provides that "[a] lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge." *See* ER 8.2(a) (Judicial and Legal Officials).

1   **IT IS THEREFORE ORDERED** that Tajudeen O. Oladiran **SHALL SHOW**

2   **CAUSE** why he should not be disbarred from the practice of law in this Court or otherwise

3   disciplined. *See* LRCiv. 83.2(a)(e). Accordingly, **IT IS ORDERED** that the Clerk of Court

4   set up a separate proceeding with a miscellaneous case number for  the transfer and

5   adjudication of this Order to Show Cause.

6       **IT IS FURTHER ORDERED** that the miscellaneous case number be reassigned, by

7   lot, to another Judge in the District of Arizona. The Clerk is directed that neither Judge

8   Bolton, Judge Murguia, Judge Snow, Judge Anderson, nor Judge Sedwick shall be selected

9   to rule on the Order to Show Cause.

10      **IT IS FURTHER ORDERED** that this Miscellaneous Case has been reassigned by

11  random lot to the Honorable David G. Campbell. All future pleadings and papers submitted

12  shall bear the following complete case number: MC-10-00025–PHX–DGC.

13      DATED this 26th day of February, 2010.

14

15

16                          G. Murray Snow
                         United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

- 9 -

# EXHIBIT A

OLADIRAN LAW, PC
Attorney at Law
2525 E. Arizona Biltmore Circle
Suite D-140
Phoenix, AZ  85016-2147
PHONE  602.682.8498
FAX  602.682.8499

Tajudeen O. Oladiran (#021265)
toladiran@oladiranlaw.com
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| TAJUDEEN O. OLADIRAN, and CHARLOTTE H. OLADIRAN, husband and wife,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>SUNTRUST MORTGAGE, INC., a Virginia corporation d/b/a/ CRESTAR MORTGAGE; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC., an Arizona corporation; SUNTRUST BANKS, INC., a Georgia corporation; JAMES M. WELLS III and JANE DOE WELLS III, husband and wife; STERLING EDMUNDS, JR and JANE DOE EDMUNDS, JR, husband and wife; JOHN DOES I – X; and ENTITIES 1-10,<br><br>                    Defendants. | CAUSE NO.: 2:09-CV-01471-SRB<br><br>**PLAINTIFFS' COUNSEL'S MOTION FOR A HONEST AND HONORABLE COURT SYSTEM**<br><br> (Assigned to the Dishonorable Susan R. Bolton) |

This motion is filed by Plaintiffs' counsel, Tajudeen O. Oladiran, Esq. ("Mr. Oladiran" or "Taj"),[1] pursuant to the law of, what goes around comes around.  Judge

---
[1] Unless otherwise indicated, capitalized terms used in this Motion will correspond to the

1   Bolton, I just read your Order and I am very disappointed in the fact that a brainless

2   coward like you is a federal judge.

3
      I accused Suntrust Bank of racketeering etc, and many good lawyers in town told
4
    me the bank's executives would never be deposed, and that the case would go nowhere.  I
5
6   stupidly stuck to the notion that everyone is equal under the law etc.  Boy was I wrong.

7   The bank cancelled depositions set by the court, cancelled a hearing set by the court, and

8   walked away without as much as a scratch.
9
      My thanks go out to Larry Folks and Kathleen Weber who both warned me that I
10
11  would lose (I should have listened to them).

12     I apologize to all my clients.  I know, I'm sorry does not repair the mess I made

13  but, that's all I've got.
14
      To my family, words can't express my apologies; please remember me kindly.
15
16     Finally, to Susan Bolton, we shall meet again you know where ☺

17     SUBMITTED this 1st day of October, 2009.

18                                OLADIRAN LAW, PC
19                                Attorney At Law

20                                By   /s/ Tajudeen O. Oladiran, Esq.

21

22
    Original of the foregoing filed with the court electronically
23  on this 1st day of October, 2009.

24

25  _____

26  capitalized terms used in Plaintiffs' First Amended Complaint (Docket No. 16).

1   I hereby certify that I electronically
    transmitted the attached document
2   to the Clerk's Office using the
    CM/ECF System for filing and
3   transmittal of a Notice of Electronic Filing to the following
    CM/ECF registrants this 1st day of October, 2009.
4

5   Kathleen Ann Weber, Esq.
    Folks & O'Connor PLLC
6   1850 N Central Ave
    Ste 1140
7   Phoenix, AZ 85004
    602-256-5906
8   Fax: 602-256-9101
    Email: weber@folksoconnor.com
9

10  Larry Omer Folks, Esq.
    Folks & O'Connor
11  1850 N Central Ave
    Ste 1140
12  Phoenix, AZ 85004
    602-256-5906
13  Fax: 602-256-9101
    Email: folks@folksoconnor.com
14

15
    By: _Tajudeen O. Oladiran_
16

17

18

19

20

21

22

23

24

25

26

# EXHIBIT B

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| TAJUDEEN O. OLADIRAN, and CHARLOTTE H. OLADIRAN, husband and wife, | ) ) ) ) | |
| Plaintiffs, | ) ) | 2:09-cv-02633 JWS |
| vs. | ) ) | ORDER AND OPINION |
| JUDGE SUSAN R. BOLTON, individually and in her official capacity as a judge of the United States District Court for the District of Arizona, and JUDGE G. MURRAY SNOW, individually and in his official capacity as a judge of the United States District Court for the District of Arizona, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## I.  BACKGROUND

Plaintiff Tajudeen O. Oladiran is an attorney admitted to practice in this court.   In this lawsuit, Mr. Oladiran represents himself and his co-plaintiff and spouse, Charlotte H. Oladiran.  Each of the defendants is a United States District Judge sitting on the United States District Court for the District of Arizona.  Mr. Oladiran filed a lawsuit in Maricopa County Superior Court on behalf of himself and his spouse against SunTrust Mortgage, Inc. and several other defendants.  The gravamen of that case is that

SunTrust and the other defendants engaged in an unlawful scheme amounting to racketeering activity which caused the Oladirans to loose their home and inflicted other substantial financial losses on them.  The state court case was removed to this court on July 16, 2009, and given case number 2:09-cv-1471 ("SunTrust lawsuit").  The SunTrust lawsuit was initially assigned to Judge Bolton who entered several orders prior to her recusal and the re-assignment of the case to Judge Snow on October 15, 2009.   Judge Snow continues to preside over the SunTrust lawsuit.

In their complaint in the case at bar, Mr. and Mrs. Oladiran allege that each of the defendants violated their civil rights and that the defendants conspired to violate their civil rights.  To support their claim that Judge Bolton violated their civil rights, the Oladirans allege that on several occasions during the course of the SunTrust litigation Judge Bolton violated their civil rights by "making a willful and/or malicious and/or *ultra vires* ruling."[1]  The Oladirans' claim against Judge Snow is based on allegations that Judge Snow violated their civil rights by failing to rectify Judge Bolton's violations, by failing to order defendant James Wells to appear for his deposition in Arizona in the SunTrust lawsuit, by immediately setting a schedule to decide a motion filed by the SunTrust defendants, and by failing to order the SunTrust defendants to repay Mr. Oladiran for the costs incurred in connection with Mr. Oladiran's initial effort to depose Mr. Wells.[2]  According to the plaintiffs, Judge Snow's actions were "willful and/or

---

[1]Verified Complaint, docket 1 at ¶¶ 50-55.

[2]*Id.* at ¶¶ 57-61.

malicious and/or *ultra vires*."[3]  The conspiracy claim rests on allegations that the actions

of Judges Bolton and Snow "appear orchestrated and appear aimed at allowing

Suntrust to prevail in the Suntrust Lawsuit."[4]  For relief against the defendants, the

Oladirans request compensatory damages of "at least Three Million Dollars," together

with punitive damages, attorney's fees, costs, and expenses.  They also ask this court

to enter various orders directing how the SunTrust litigation is to proceed and removing

Judge Snow from that litigation.[5]

## II.  DISCUSSION

Although no motion to dismiss this case has been filed, this court perceives its

duty to include an obligation to manage its own docket so as to dispose of clearly

frivolous cases as early as that may be accomplished.  This helps assure the "just,

speedy and inexpensive determination of every action."[6]  Such efforts spare all litigants,

plaintiffs as well as defendants, unnecessary expense and effort.  It also frees judicial

resources for use in resolving disputes that have at least colorable merit.

### A.  Plaintiffs' Claims For Damages

As the Supreme Court has often explained, judges generally enjoy immunity from

suits seeking money damages.[7]  "Although unfairness and injustice to a litigant may

result on occasion, 'it is a general principle of the highest importance to the proper

---

[3]*Id.* at ¶ 62.

[4]*Id.* at ¶ 66.

[5]*Id.* at pp. 14-15.

[6]Fed. R. Civ. P. 1.

[7]*See, Mireles v. Waco*, 502 U.S. 9 (1991) (collecting cases).

administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.'"[8]

There are two exceptions to the rule of judicial immunity.  First, judicial immunity does not shield "nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity."[9]  Second, judicial immunity does not protect "actions, though judicial in nature, taken in the complete absence of all jurisdiction."[10]

"[W]hether an act by a judge is a 'judicial' one relate[s] to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity."[11]  Here, the Oladiran's claims all address acts taken by Judges Bolton and Snow in the course of presiding over the SunTrust lawsuit.  All of the actions pled in support of the claims relate to routine judicial acts–deciding motions, setting schedules, and the like.  They also were all acts arising out of the Oladirans dealings with the judges in their judicial capacity.  In short, these are indisputably judicial acts.  Although plaintiffs purport to state claims against the judges in their individual capacities, the facts pled do not support such individual capacity claims because every act which forms the basis for the claims was an act taken in the judicial capacity.  Moreover, even when a judicial act is taken for some

---

[8]*Id.* (quoting *Bradley v. Fisher*, 13 Wall 335, 347, 20 L.Ed. 646 (1872)).

[9]*Id.* at 11.

[10]*Id.* at 12.

[11]*Stump v. Sparkman*, 435 U.S. 349, 362 (1978).

improper personal reason, judicial immunity applies.  As the Supreme Court has explained, judicial immunity "applies even when the judge is accused of acting maliciously or corruptly."[12]  This is so, because recognizing the immunity in all cases promotes the public's interest in having judges who are free to use their judicial authority independently without fearing retribution.[13]  It follows that the first exception does not apply.  Similarly, there is no basis to assert that the actions by Judges Bolton and Snow were taken in the complete absence of jurisdiction.  All were taken in the context of the SunTrust lawsuit over which they clearly had jurisdiction, nor do plaintiffs contend otherwise. The claims for money damages are patently frivolous and will be dismissed with prejudice.

**B.  Plaintiff's Claims for Relief in the SunTrust Lawsuit**

This court is not an appellate court and lacks jurisdiction to intervene in an on-going lawsuit.  Indeed, it is hornbook law that even an appellate court may not ordinarily intervene in an on-going lawsuit in a trial court.  With respect to the management and progress of the SunTrust lawsuit, plaintiffs are limited to seeking redress in that lawsuit itself.  To the extent that plaintiffs wish to challenge Judge Snow's continuing ability to preside over that case, they must file a motion in the Suntrust case pursuant to 28 U.S.C. § 144 (bias or prejudice of a judge) or file a motion asserting that Judge Snow must recuse himself pursuant to 28 U.S.C. § 455 (disqualification of a judge).  As a practicing attorney, Mr. Oladiran should be, but apparently is not, aware of the applicable

---

[12]*Pierson v. Ray*, 386 U.S. 547, 554 (1967).

[13]*Id.*

statutes.  The request to have this court intervene in the on-going SunTrust lawsuit is also frivolous.  Plaintiff's claims requesting relief in the form of orders in the SunTrust lawsuit and the recusal of Judge Snow from that lawsuit will be dismissed without prejudice to any attempt to obtain relief plaintiffs may make in the SunTrust lawsuit itself.

## C.  Rule 11 Concern

Federal Rule of Civil Procedure 11 provides that when an attorney presents a complaint to the court, he or she is making certain representations.  Among them is a representation that the claims in the complaint "are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."[14]  It appears to this court that Mr. Oladiran has violated Rule 11(b)(2).  In eighteen years on the bench, this judge has seen a number of lawsuits like this one which were foreclosed by the doctrine of judicial immunity.  However, every one of them was filed by a party proceeding *pro se*.  Mr. Oladiran is the first lawyer who has ever filed such a lawsuit which has been assigned to this judge.  Accordingly, pursuant to Rule 11(c)(3), the court will require Mr. Oladiran to show cause why the court should not impose a $500 sanction upon him for filing a complaint containing claims that could not possibly succeed in light of the doctrine of judicial immunity and for asking this district court to intervene in an another on-going district court case.

---

[14]Fed. R. Civ. P. 11(b)(2).

## III.  CONCLUSION

For the preceding reasons,

(1) Plaintiffs' claims are hereby **DISMISSED** as follows:

    (A)  Plaintiffs' claims seeking money damages are dismissed with prejudice.

    (B)  Plaintiffs' claims seeking relief in the SunTrust lawsuit are dismissed without prejudice to any efforts plaintiffs may make to secure relief in the SunTrust lawsuit itself.

(2)  The Clerk will please enter judgment dismissing all claims in accordance with the preceding.

(3) Within 14 days from the date of this order, Mr. Oladiran shall file papers showing cause why the court should not impose a $500 sanction on him pursuant to Federal Rule of Civil Procedure 11(c).

    DATED this 12th day of January 2010.


                    /s/ JOHN W. SEDWICK
                    UNITED STATES DISTRICT JUDGE

# EXHIBIT C

1   **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9   Charles Okonkwo,                    )    No. CV 08-633-PHX-MHM
                                         )
10              Plaintiff,               )    **ORDER**
                                         )
11  vs.                                  )
                                         )
12                                       )
    Glendale Union High School District, et)
13  al.,                                 )
                                         )
14              Defendant.               )
                                         )
15  _____

16

17         Currently pending before the Court is Defendant the Glendale Union High School

18  District, et al.'s Motion for Summary Judgment, (Dkt.#58), and Motion for Summary

19  Disposition, (Dkt.#78), as well as Plaintiff Charles Okonkwo's Motion for Reconsideration,

20  (Dkt.#86) and Motion for an Extension of Time to Find an Attorney, (Dkt.#87).  After

21  reviewing the relevant pleadings, the Court issues the following Order.

22         Plaintiff Charles Okonkwo filed the instant suit pro se against Defendants after his

23  contract for employment was terminated.  On June 13, 2008, the Court issued a Scheduling

24  Order in which it noted that fact discovery would close on March 13, 2009.  In the same

25  Order, the Court directed the Parties to file their dispositive motions by April 15, 2009, or

26  30 days after the conclusion of fact discovery.

27         On February 17, 2009, approximately one month before fact discovery ended, the

28  Court granted Plaintiff's motion to substitute Mr. Tajudeen O. Oladiran into the case as

1  counsel of record. On February 19, 2009, Plaintiff, through his newly acquired counsel,

2  requested that the Court continue the case for 30 days, and enlarge fact discovery for 60

3  additional days. In that Motion, Plaintiff and his counsel argued that Mr. Oladiran needed

4  time to get caught up with the case and that Mr. Okonkwo was having difficulty

5  remembering relevant information and communicating them to counsel.

6  On March 4, 2009, Plaintiff filed a Motion for a Protective Order, which sought to

7  prevent Mr. Okonkwo from being deposed due to an alleged mental infirmity. On March 6,

8  2009, the Court denied Plaintiff's Motion for a Protective Order on the grounds that the filing

9  did not conform with the Court's Rules of Practice in Civil Cases, which control how a

10  litigant may raise a discovery issue. After the Court denied Plaintiff's Motion for a Protective

11  Order, the Parties never submitted a discovery dispute that conformed to the Court's Rules

12  of Practice, nor did the Parties seek clarification on whether the Court would accept such a

13  submission.

14  On April 15, 2009, as specified by the Court's Scheduling Order, Defendants moved

15  for summary judgment on Plaintiff's employment discrimination claims. The next day, on

16  April 16, 2009, the Court issued an Order granting Plaintiff's request to enlarge fact

17  discovery by 30 days.  While the Court did not grant the full relief sought by Plaintiff, i.e.,

18  60 additional days of discovery, the Court's Order provided Plaintiff with the unusual

19  opportunity to conduct discovery to oppose a motion for summary judgment after that motion

20  had been filed on the Court's electronic docket and was available for Plaintiff's counsel to

21  review. The Court further Ordered that Plaintiff would have 10 days after completion of the

22  enlarged fact discovery deadline to file a brief in response to Defendants' Motion for

23  Summary Judgment.

24  There is no record that Plaintiff's counsel attempted to conduct any fact discovery

25  during the 30 day period of time provided by the Court. Nevertheless, at the expiration of the

26  enlarged discovery deadline, Plaintiff, through Mr. Oladiran, filed a Motion to Recuse the

27  Court, a Motion for a Ruling that Mr. Okonkwo Was Not Legally Competent When He Was

28  A Pro Se Litigant, Or In The Alternative, a Motion For A Hearing To Determine Plaintiff's

1  Competency, and a Motion to Continue Proceedings on Defendants' Motion for Summary
2  Judgment.

3     On May 18, 2009, the Court issued an Order directing that Defendants' Motion for
4  Summary Judgment, and all associated briefing, be held in abeyance pending the resolution
5  of Plaintiff's outstanding Motions.

6     On October 28, 2009, the Court denied Plaintiff's Motion for Recusal in a written
7  Order. (See Dkt.#72). That same day, the Court conducted a hearing where it denied
8  Plaintiff's Motion for a Ruling that Mr. Okonkwo Was Not Legally Competent When He
9  Was A Pro Se Litigant.  At the same hearing, Plaintiff's counsel declined the Court's offer
10 to engage in extended fact discovery for an additional 30 days. After turning down this offer
11 Plaintiff was directed to file a response to Defendants' Motion for Summary Judgement by
12 November 25, 2009.

13    As of December 8, 2009, Plaintiff's counsel had yet to file a brief in opposition to
14 Defendants' Motion. Defendants then moved the Court for summary disposition of the
15 lawsuit in their favor. After Plaintiff's counsel failed to respond to Defendants' Motion for
16 Summary Disposition, on February 2, 2010, the Court issued an Order to Show Cause why
17 it should not grant Defendants' Motion for Summary Disposition and dismiss Plaintiff claims
18 with prejudice. On February 3, 2010, one day after the Court issued its Order to Show Cause,
19 Plaintiff requested an extension of time to file a response, and his attorney, Mr. Oladiran,
20 requested to withdraw as counsel of record.

21    On February 4, 2010, the Court denied Plaintiff's request for an extension of time and
22 denied Mr. Oladiran's Motion to Withdraw. The Court determined that it would be too
23 prejudicial to Mr. Okonkwo's for his attorney to withdraw from the case under such
24 circumstances. The Court again directed Plaintiff's counsel to file a response to Defendants'
25 Motion for Summary Judgment.  The Court noted that if no response was filed by 5 P.M. on
26 Friday, February 12, 2010, the Court would be left with no choice but to dismiss Plaintiff's
27 lawsuit in its entirety.

28

On February 5, 2010, Plaintiff, through his counsel, filed a Motion for Reconsideration of the Court's Order.  In that Motion, Plaintiff's counsel, Mr. Oladiran, stated that he  had **no intention of complying with the Court's earlier Order**: "For the reasons stated below, Counsel for Plaintiff WILL NOT comply with the Murguia 2/4/10 Order, and WILL NOT file any response on behalf of Plaintiff to Defendants' Motion for Summary Judgment on or before 5 P.M. on Friday, February 12, 2010." (See Dkt.#86, p. 2.) The Motion for Reconsideration also attempted to reargue issues that had been previously addressed by the Court, including the claim that Plaintiff was not legally competent while representing himself, that counsel for Defendants had engaged in systematic abuse of the legal system, that the Court had demonstrated a bias towards Defendants, and that Plaintiff needed a much more significant amount of time to conduct discovery than the two 30 day periods offered by the Court (the second of which was rejected by Mr. Oladiran).

On February 12, 2010, as promised, Plaintiff's counsel did not file a response to Defendants' Motion for Summary Judgment. Instead, Mr. Okonkwo, without the assistance of Mr. Oladiran, filed a pro se response to Defendant's Motion for Summary Judgment and a Motion for an Extension of Time to Find an Attorney.  In the Motion for an Extension, Mr. Okonkwo argued that:

> It is Plaintiff's belief that the Judge has sided with Defendants at every step and chooses which rule to follow, even if the rule violates a higher rule or precedent, as was the issue of incompetency. It appears to Plaintiff and to most objective observers that this Judge has tried at every step to rule favorably for the Defendants, no matter the situation, even if it means discarding a higher court ruling . . ..  Plaintiff doesn't believe that he could get justice from this Judge.

(See Dkt.#87, p.5.)  Of course, the Court previously addressed the issue of Plaintiff's Motion for Recusal, (Dkt.#72), as well as the request to vacate all previous Court Orders due to Plaintiff's alleged mental infirmity. The Court determined that both of these arguments lacked merit.

With respect to Plaintiff's claims regarding a lack of competency, the Court determined that the procedural history of this case shows that Mr. Okonkwo repeatedly demonstrated his ability to not only understand the nature of the action but actively assist in

the prosecution of this lawsuit.  See Kelly v. AZ Dept. of Econ. Sec., 137 P.3d 973, 978 (Ariz. Ct. App. 2006) (noting that the legal definition of incompetence is the inability to "understand the nature and object of the proceedings or assist in his or her (case)").   In addition, the Court pointed out that Magistrate Judge Anderson's March 4, 2009 Order, which sanctioned Mr. Okonkwo, specifically stated that Mr. Okonkwo is a capable and sophisticated pro se litigant. The record also plainly reveals that Mr. Okonkwo was able to file a complaint, serve Defendants, prepare for and attend a Rule 16 Scheduling Conference, and take an active role in the adversarial discovery process. This kind of behavior on the part of a pro se plaintiff in a civil suit underscores that party's ability to appreciate the legal proceedings and assist in the prosecution of the litigation.  See id. at 977 (noting that a diagnosis of being mentally ill is not the equivalent of being defined as legally incompetent).

With respect to Plaintiff's Motion for Recusal,[1] the Court has already permitted Mr. Okonkwo to engage in two 30 day periods of additional fact discovery beyond the original March 15, 2009 deadline and it has continually extended Plaintiff's opportunity to file a response to Defendant's Motion for Summary Judgment. Notwithstanding this unique opportunity, Plaintiff and his attorney chose not to conduct any discovery during the first extension of time and rejected the Court's second offer.

With respect to the response in opposition to Defendant's Motion for Summary Judgment, Local Rule 83.3(c)(2) states that "[w]henever a party has appeared by an attorney, that party cannot thereafter appear or act in that party's own behalf in the cause . . .." In addition, Local Rule 83.3(b) states that "[n]o attorney shall be permitted to withdraw or be substituted as attorney of record in any pending action except by formal written order of the

_____

[1]It is also worth  mentioning that Mr. Okonkwo, while represented by Mr. Oladiran, filed suit against the Court and Magistrate Judge Lawrence O. Anderson, as well as opposing counsel in this action, for allegedly violating his civil rights throughout the prosecution of this lawsuit.  See Okonkwo v. Murguia, et al., CV-09-2604-JWS-PHX.  The case was ultimately dismissed, and Judge John Sedwick issued an order to show cause why Mr. Oladiran should not be subject to sanctions for filing the suit. (See id. at Dkt.#13.)

1   Court . . . ."  In its February 4, 2010 Order, the Court clearly denied Mr. Oladiran's request

2   to withdraw as counsel of record from this action before filing a long overdue response to

3   Defendants' Motion for Summary Judgment. Not only did Mr. Oladiran fail to file a

4   responsive brief on behalf of his client, but his Motion for Reconsideration demonstrates an

5   astonishing lack of respect for the legal system.  Because filing a pro se response while being

6   represented by counsel violates the Local Rules of this District, the Court will strike from its

7   docket Mr. Okonkwo's response brief, as well as his Motion for an Extension of Time to

8   Find an Attorney.

9          Because counsel for Plaintiff has failed to comply with the Court's Order concerning

10   the filing of a response brief, the Court must consider the consequences of such action.

11   Although disfavored, the Ninth Circuit has held that a court may dismiss a lawsuit for a

12   party's failure to comply with a district court's order.  See Ferdik v. Bonzelet, 963 F.2d 1258,

13   1260-61 (9th Cir. 1992) (citing Henderson v. Duncan, 779 F.2d 1421, 1423 (9th Cir. 1986)).

14   When determining whether dismissal for failure to comply with a court order is appropriate,

15   the district court weighs five factors "(1) the public's interest  in expeditious resolution of

16   litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the

17   defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the

18   availability of less drastic alternatives."  Id.

19          After considering the relevant factors, the Court finds that dismissal of Mr.

20   Okonkwo's lawsuit is warranted.  Defendants' Motion for Summary Judgement has been

21   pending since April 2009 without a response.  The delay in this case since November 25,

22   2009 is solely attributable to Mr. Oladiran's inability to file a responsive brief and his refusal

23   to follow the Court's clear instructions.  While the Court acknowledges that there is a strong

24   public policy in favor of resolving cases on the merits, see Raiford v. Pounds, 640 F.2d 944,

25   945 (9th Cir. 1981), the behavior on the part of Plaintiff's counsel has been egregious, and

26   the record clearly demonstrates that the Court has gone to great lengths to make sure that this

27   lawsuit could be adjudicated on the merits.  On February 2, 2010, the Court stated in no

28   uncertain terms that if Mr. Oladiran did not file a response to Defendants' Motion for

1   Summary Judgment by February 12, 2010, his client's case would be dismissed.  Mr.

2   Oladiran responded to the Court's directive by defiantly stating that he had no intention of

3   filing anything on his client's behalf, as instructed. Certainly, Mr. Oladiran must have been

4   aware that his refusal would result in a dismissal.[2]

5        Furthermore, the tone and substance of Mr. Oladiran's most recent filings have

6   convinced the Court that sanctions less severe than dismissal would be ineffective.  Mr.

7   Oladiran has matter-of-factly stated that "Counsel for Plaintiff WILL NOT comply with the

8   Murguia 2/4/10 Order, and WILL NOT file any response on behalf of Plaintiff to Defendants'

9   Motion for Summary Judgment." The Court cannot not permit Mr. Oladiran's defiance to

10  serve as grounds for his withdrawal as counsel of record. Short of holding Mr. Oladiran in

11  contempt until he produces a responsive brief, dismissal is the only other appropriate

12  sanction.

13       **Accordingly,**

14       **IT IS HEREBY ORDERED** striking Mr. Okonkwo's pro se filings made on

15  February 12, 2010. (Dkt.##87,88.)

16       **IT IS FURTHER ORDERED** denying as moot all other pending motions.

17  (Dkt.##58,78,86,90.)

18       **IT IS FURTHER ORDERED** dismissing Charles Okonkwo's Complaint in its

19  entirety for failing to comply with an Order of the Court.

20  / / /

21

22

23

24

25

26       [2]The Court notes that Mr. Okonkwo cannot be classified as a simple bystander to his

27  lawyer's misconduct, as his February 12, 2010 pro se filings essentially restate the same
    accusations of judicial misconduct, unfair litigation practices and mental incompetency that

28  his counsel has been making throughout this litigation.

1    **IT IS FURTHER ORDERED** directing the Clerk of the Court enter judgment

2  accordingly.

3    DATED this 25th day of February, 2010.

4

5

6    _____

7    Mary H. Murguia
     United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 8 -

# EXHIBIT D

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| CHARLES U. OKONKWO,<br>an individual,<br><br>        Plaintiff,<br><br>        vs.<br><br>JUDGE MARY H. MURGUIA, individually<br>and in her official capacity as a judge of<br>the United States District Court for the<br>District of Arizona, and MAGISTRATE<br>JUDGE LAWRENCE O. ANDERSON,<br>individually and in his official capacity as<br>a judge of the United States District Court<br>for the District of Arizona, and LITTLER<br>MENDELSON, P.C., a California<br>professional corporation,<br><br>        Defendants. | 2:09-cv-02604 JWS<br><br>ORDER AND OPINION |

## I.  BACKGROUND

Plaintiff Charles U. Okonkwo is also the plaintiff in another case in this district,

*Okonkwo v. Glendale Union High School District, et al.*, Case No. 2:08-cv-0633 MHM

("Glendale lawsuit").  Mr. Okonkwo initiated the Glendale lawsuit on his own behalf.

Then in February of 2009, Mr. Tajudeen Oladiran appeared as counsel for Mr. Okonkwo

in the Glendale lawsuit.  Mr. Oladiran is also counsel for Mr. Okonkwo in the case at bar.

The complaint in this case pleads civil rights and state law tort claims against three defendants: United States District Judge Mary H. Murguia, United States Magistrate Judge Lawrence O. Anderson, and the law firm of Littler Mendelson, P.C.

As the basis for the civil rights claims against Judge Murguia, the complaint alleges that she took the following actions in the Glendale lawsuit: "prejudged and prejudiced Plaintiff's case by sending him to a mandatory settlement conference before Magistrate Anderson at the beginning of the case"[1] which was a conspiracy with Judge Anderson and Littler Mendelson,[2] allowed Mr. Okonkwo to be sanctioned in the sum of $3,958.50 by Magistrate Judge Anderson for failure to comply with the settlement conference order,[3] did not advise Mr. Okonkwo that a settlement conference is not mandatory,[4] failed to inform "Plaintiff or his counsel of the published Anderson Sanction Order,"[5] entered an order that "Okonkwo is not legally incompetent"[6] which was contrary to the evidence and applicable precedent,[7] presided over and allowed the lawsuit filed by Mr. Okonkwo to proceed even though Mr. Okonkwo was incompetent and thus intentionally and recklessly allowed counsel for the defendants to take advantage of

---

[1]Verified Complaint at ¶ 14.

[2]*Id.* at ¶ 39.

[3]*Id.* at ¶ 15 ; Order at doc. 51 in the Glendale lawsuit.

[4]Verified Complaint at ¶ 39.

[5]*Id.*, at ¶ 42.

[6]*Id.* at ¶ 47.

[7]*Id.* at ¶¶ 48 and 49.

Okonkwo,[8] and by doing all these things conspired with Judge Anderson and Littler Mendelson to violate Mr. Okonkwo's civil rights.[9]

The complaint alleges as the basis for the civil rights claims against Judge Anderson that he took the following actions in the Glendale lawsuit: imposed sanctions on Mr. Okonkwo in connection with the settlement conference,[10] did not advise Mr. Okonkwo that a settlement conference is not mandatory[11] which was a conspiracy with Judge Murguia and Littler Mendelson[12] authored the sanctions order out of malice in order to justify scheduling the settlement conference,[13] failed to inform "Plaintiff or his Counsel of the published Anderson Sanction Order,"[14] did not specifically ask Mr. Okonkwo "why he missed the non-mandatory settlement conference," relied on a "pre-settlement memorandum submitted by [Littler Mendelson]" in fashioning his sanctions order,[15] presided over the lawsuit filed by Mr. Okonkwo even though Mr. Okonkwo was incompetent and thus intentionally and recklessly allowed counsel for the defendants to take advantage of Mr. Okonkwo,[16] and by doing all these things

---

[8]*Id.* at ¶¶ 50 and 51

[9]*Id.* at ¶ 45.

[10]*Id.* at ¶¶ 15, 35-37, and 41.

[11]*Id.* at ¶ 15.

[12]*Id.* at ¶ 39.

[13]*Id.* at ¶¶ 33 and 41.

[14]*Id. at ¶ 42.*

[15]*Id.* at ¶ 44.

[16]*Id.* at ¶¶ 50-51

conspired with Judge Murguia and Littler Mendelson to violate Mr. Oknkwo's civil rights.[17]

The preceding acts by Judges Murguia and Anderson are generally characterized by Mr. Okonkwo as "malicious and illegal,"[18] intentional or reckless[19] or *ultra vires*.[20]  In addition to the civil rights claims, Mr. Okonkwo alleges that the conduct by Judges Murguia and Anderson was tortious and amounts to the intentional or negligent infliction of emotional distress.[21]

For relief Mr. Okonkwo asks this court to enter an award of compensatory and punitive damages plus costs and attorneys' fees against Judges Murguia and Anderson, as well as Littler Mendelson.  He also asks this court to determine that Mr. Okonkwo was not legally competent to represent himself in the Glendale lawsuit, vacate all the rulings by Judges Murguia and Anderson in the Glendale lawsuit, and remove Judges Murguia and Anderson from the Glendale lawsuit.[22]  Additional background relating to the claims against Littler Mendelson is set out in section II., C. below.

## II.  DISCUSSION

There is no pending motion to dismiss the claims against Judges Murguia and Anderson.  Nevertheless, this court perceives its duty to include an obligation to manage

---

[17]*Id.* at ¶ 45.

[18]*Id.* at ¶ 32.

[19]*E.g, id.* at ¶ 51.

[20]*Id.*

[21]*Id.* at ¶¶ 55 thru 60.

[22]*Id.* at pp. 16-17.

the cases on its docket so as to dispose of clearly frivolous claims at the earliest stage of the litigation when such is feasible.  Furthermore, while there is no pending motion to dismiss the claims against Littler Mendelson, the existing complaint is defective and should be dismissed with leave to amend.  Such pro-active case management helps secure the "just, speedy and inexpensive determination of every action."[23]  Weeding out frivolous claims and allowing for the prompt amendment of inadequate complaints spares all litigants, both plaintiffs and defendants, unnecessary expense and effort.

**A.  Plaintiffs' Claims For Damages Against the Judges**

The United States Supreme Court has held that judges generally enjoy immunity from suits seeking money damages.[24]  "Although unfairness and injustice to a litigant may result on occasion, 'it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.'"[25]

Two exceptions to the rule of judicial immunity exist.  The first exception is that judicial immunity does not shield "nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity."[26]  The second exception is that judicial immunity does not protect "actions, though judicial in nature, taken in the complete absence of all jurisdiction."[27]

---

[23]Fed. R. Civ. P. 1.

[24]*See, Mireles v. Waco*, 502 U.S. 9 (1991) (collecting cases).

[25]*Id.* (quoting *Bradley v. Fisher*, 13 Wall 335, (1872)).

[26]*Mireles*, 502 U.S. at 11.

[27]*Id.* at 12.

The test for determining when an action is judicial in nature has been explained as follows: "[W]hether an act by a judge is a 'judicial' one relate[s] to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity."[28]  Here, Mr. Okonkwo's claims all address acts taken by Judges Murguia and Anderson during the course of presiding in the Glendale lawsuit.  All of the actions pled to support Mr. Okonkwo's claims concern ordinary judicial acts–setting settlement conferences, deciding motions, ruling on the competency of a party, imposing sanctions for violating court orders, and so forth.  All such acts also arise out of Mr. Okonkwo's dealings with the judicial officers in their judicial capacity.  In sum, the acts of which Mr. Okonkwo complains are clearly judicial acts.  Although Mr. Okonkwo recites in the case caption that his claims are also brought against the judges in their individual capacities, the facts pled cannot support individual capacity claims, because every act which forms the basis for Mr. Okonkwo's claims was an act taken in the judicial capacity.  Moreover, even when a judicial act is taken for some improper personal reason, judicial immunity applies.  As the Supreme Court has explained, judicial immunity "applies even when the judge is accused of acting maliciously or corruptly."[29]  This is so, because recognizing the immunity in all cases promotes the public's interest in having judges who are free to use

---

[28]*Stump v. Sparkman*, 435 U.S. 349, 362 (1978).

[29]*Pierson v. Ray*, 386 U.S. 547, 554 (1967).

their judicial authority independently without fearing retribution.[30]  It follows that the first exception does not apply.

Similarly, there is no basis to assert that the actions by Judges Murguia and Anderson were taken in the complete absence of jurisdiction.  All were taken in the context of the Glendale lawsuit over which they clearly had jurisdiction, nor does Mr. Okonkwo suggest otherwise. The claims for money damages are patently frivolous and will be dismissed with prejudice.

**B.  Plaintiff's Claims for Relief in the Glendale Lawsuit**

This court is not an appellate court and lacks jurisdiction to intervene in an on-going lawsuit.  It is hornbook law that even a court of appeals may not ordinarily intervene in an on-going lawsuit in a trial court.  To obtain relief relating to the management and progress of the Glendale lawsuit, Mr. Okonkwo is limited to seeking redress in that lawsuit itself.  To the extent that he may wish to challenge the ability of Judges Murguia and Anderson to continue presiding in the Glendale lawsuit, he must file a motion in the Glendale lawsuit pursuant to 28 U.S,C. § 144 (bias or prejudice of a judge) or file a notice asserting that Judge Murguia and/or Judge Anderson must recuse pursuant to 28 U.S.C. § 455 (disqualification of a judge).  Remarkably, Mr. Oladiran seems to be blissfully unaware of the applicable statutes.  The request to have this court intervene in the on-going Glendale lawsuit is also frivolous.  Mr. Okonkwo's claims requesting relief in the form of orders in the Glendale lawsuit and the recusal of Judges

---

[30] *Id.*

Murguia and Anderson from that lawsuit will be dismissed without prejudice to any attempt to obtain relief Mr. Okonkwo may make in the Glendale lawsuit itself.

## C.  Plaintiff's Claims Against Littler Mendelson

Of course, Littler Mendelson does not enjoy judicial immunity.  However, like any other defendant it is entitled to reasonable notice of the claims which have been brought against it.  In the complaint, Mr. Okonkwo alleges next to nothing in the way of facts to support a claim against the law firm.  He alleges very generally that the law firm and the two judges "combined and/or coordinated actions"[31] and conspired with one another (without laying out any facts to support the assertions beyond rulings made by the judges),[32] followed a litigation strategy to convince the judicial officers that Mr. Okonkwo was a "serial litigant pushing a worthless case" and to remind Mr. Okonkwo that the judges were biased against him,[33] generally behaved maliciously and illegally (without saying how),[34] and charged their clients high fees.[35]  To put it bluntly, the claims against Littler Mendelson appear to this court to be nothing more than complaints about the fact that its advocacy was allowing its clients to prevail in the Glendale lawsuit.

To comply with the pleading standard of Federal Rule of Civil Procedure 8(a)(2), the Verified Complaint's "non-conclusory 'factual content' and reasonable inferences

---

[31]Verified Complaint at ¶ 15.

[32]*Id.* at ¶¶ 39 and 45.

[33]*Id.* at ¶ 29.

[34]*Id.* at ¶ 32.

[35]*Id.* at ¶ 30.

from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."[36]

Here, there are almost no non-conclusory allegations and there is no reasonable

inference from them that Littler Mendelson did anything more than aggressively litigate in

the Glendale lawsuit.  The court is forced to conclude that the Verified Complaint fails to

state a claim for relief against Littler Mendelson.  However, the court cannot be certain

that Mr. Okonkwo could not comply with Rule 8(a)(2), because claims against the law

firm arising out of Littler Mendelson's actions in connection with the Glendale lawsuit

would not be barred by the doctrine of judicial immunity.  For that reason, the claims

against Littler Mendelson will be dismissed with leave to file an amended complaint

within 21 days from the date of this order.

## D.  Rule 11 Concern

Federal Rule of Civil Procedure 11 provides that when an attorney presents a

complaint to the court, he or she is making certain representations.  Among them is a

representation that the claims in the complaint "are warranted by existing law or by a

nonfrivolous argument for extending, modifying, or reversing existing law or for

establishing new law."[37]  It appears that Mr. Oladiran has violated Rule 11(b)(2).

Mr. Oladiran is the only lawyer this court has ever seen file a lawsuit like this one which

includes claims which are foreclosed by the doctrine of judicial immunity, such claims

being ordinarily seen only in cases filed by inexperienced *pro se* litigants.  Accordingly,

pursuant to Rule 11(c)(3), the court will require Mr. Oladiran to show cause why the court

---

[36]*Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

[37]Fed. R. Civ. P. 11(b)(2).

should not impose a $500 sanction upon him for filing a complaint containing claims that could not possibly succeed in light of the doctrine of judicial immunity and for requesting this district court to overrule decisions in another district court case.

### III.  CONCLUSION

For the preceding reasons, **IT IS ORDERED**:

(1)  Plaintiff Okonkwo's claims seeking money damages, costs, and attorneys' fees from Judge Murguia and Magistrate Judge Anderson are hereby **DISMISSED** with prejudice, (2) plaintiff Okonkwo's claims seeking relief in the Glendale lawsuit are **DISMISSED** without prejudice to any efforts he may make to secure relief in the Glendale lawsuit itself, and (3) plaintiff Okonkwo's claims against Littler Mendelson are **DISMISSED** with leave to file an amended complaint with 21 days from the date of this order.  The court will not enter judgment on any of the claims at this time, pending plaintiff's opportunity to file an amended complaint.

**AND IT IS FURTHER ORDERED**: Within 14 days from the date of this order, Mr. Oladiran shall file papers showing cause why the court should not impose a $500 sanction on him pursuant to Federal Rule of Civil Procedure 11(c).

DATED this 15th day of January 2010.

/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE

# EXHIBIT E

**From:** Bowen, Marcus (USMS)
**Sent:** Monday, February 22, 2010 5:57 PM
**To:** 'Kathleen Weber'
**Cc:** Tracy, Rich (USMS); Harkins, Jennifer (USMS); Aguilar, David (USMS); Rivera, Fidencio (USMS)
**Subject:** RE: Oladiran

Thanks Kathleen for forwarding me Oladiran's below email. We currently have an on-going investigation concerning Oladiran. I plan to attend the court appearance on Friday. I would like to meet with you tomorrow to discuss this matter further. I will call you in the morning to schedule a time. Thanks, Marcus.

**From:** Kathleen Weber [mailto:Weber@folksoconnor.com]
**Sent:** Monday, February 22, 2010 12:23 PM
**To:** Bowen, Marcus (USMS)
**Cc:** Larry Folks
**Subject:** Oladiran
**Importance:** High

Mr. Bowen,

I last spoke with you on October 1, 2009 regarding Tajudeen O. Oladiran who filed a motion with the District Court which appeared to threaten Judge Bolton. She later recused herself and the case was transferred to Judge Snow. Since then, Mr. Oladiran has continued to behave with increasingly aberrant behavior, speaking incoherently on phone messages, suing Judges Bolton and Snow (which case was dismissed but he has appealed to the 9th Circuit) and threatening us with lawsuits, bar complaints and bad press. Today he sent me the email below which I take as a personal threat.

We are scheduled to appear before Judge Snow this Friday, February 26, at 3:30 p.m., for a Case Management Conference. I understand the U.S. Marshall will be present. However, I wanted to make you aware of this threat.

Thanks,

Kathleen Weber

1850 N. Central Ave., Ste. 1140
Phoenix, AZ 85004
602-515-0129 *Direct Line* • 602-256-9101 *Fax*

**From:** toladiran@oladiranlaw.com [mailto:toladiran@oladiranlaw.com]
**Sent:** Monday, February 22, 2010 11:12 AM
**To:** Kathleen Weber
**Cc:** Larry Folks
**Subject:** Re: SunTrust/Oladiran; your 2/21/10 email

Ms. Weber: Thanks for your responses. I do not believe you but, since you are all willing to

join in the lie, we move on. However, in the name of Allah, I assure you that if you continue to play Russian roulette with me, sooner or later, you will all lose, InsaAllah.
Taj Oladiran

Sent via BlackBerry from T-Mobile

**From:** Kathleen Weber <Weber@folksoconnor.com>
**Date:** Mon, 22 Feb 2010 09:14:40 -0700
**To:** 'toladiran@oladiranlaw.com'<toladiran@oladiranlaw.com>
**Cc:** Larry Folks<Folks@folksoconnor.com>
**Subject:** RE: SunTrust/Oladiran; your 2/21/10 email

Taj,

No.

Kathleen Weber


1850 N. Central Ave., Ste. 1140
Phoenix, AZ 85004
602-515-0129 *Direct Line* • 602-256-9101 *Fax*


**From:** toladiran@oladiranlaw.com [mailto:toladiran@oladiranlaw.com]
**Sent:** Monday, February 22, 2010 9:10 AM
**To:** Kathleen Weber
**Cc:** Larry Folks
**Subject:** Re: SunTrust/Oladiran; your 2/21/10 email

Kathleen: Has your firm or SunTrust (or any agent of either party) ever paid John Clemency or Gallagher & Kennedy in connection with any issue within the time frame that this lawsuit has been in existence?
Taj

Sent via BlackBerry from T-Mobile

**From:** Kathleen Weber <Weber@folksoconnor.com>
**Date:** Mon, 22 Feb 2010 08:52:04 -0700
**To:** 'toladiran@oladiranlaw.com'<toladiran@oladiranlaw.com>
**Cc:** Larry Folks<Folks@folksoconnor.com>
**Subject:** RE: SunTrust/Oladiran; your 2/21/10 email

Taj,

I received your email dated February 21, 2010 in which you claimed to have sent us an email requesting information about John Clemency. As I stated to you on February 18, 2010, Larry and I

never received any such email.  See below.  In addition, although your email implies you sent us an email on February 19, 2010, Larry and I never received that email until this morning with your February 21, 2010 email.

Furthermore, we do not believe your claims against us or John Clemency have any merit.  John contacted us on your behalf to discuss mediation to resolve the case.  John voluntarily served as mediator for a half-day mediation which ended in an impasse.  Our firm and SunTrust have never paid John Clemency or Gallagher & Kennedy in connection with this lawsuit.

Kathleen Weber

1850 N. Central Ave., Ste. 1140
Phoenix, AZ 85004
602-515-0129 *Direct Line* • 602-256-9101 *Fax*

**From:** Kathleen Weber
**Sent:** Thursday, February 18, 2010 1:54 PM
**To:** 'toladiran@oladiranlaw.com'
**Cc:** Larry Folks
**Subject:** SunTrust/Oladiran; request

Taj,

I received your voice mail message but did not understand everything you said.  I thought you said you emailed me something about John Clemency and wanted to know about my contact with him for a Complaint you are filing.  I have not received any email from you regarding this matter although I did receive a copy of Plaintiffs' Case Management Report you filed with the District Court on Tuesday evening.  Please confirm in writing your request so that I am clear on what you want.

Thanks,

Kathleen Weber

1850 N. Central Ave., Ste. 1140
Phoenix, AZ 85004
602-515-0129 *Direct Line* • 602-256-9101 *Fax*
*Commercial Bankruptcy • Consumer Bankruptcy • Foreclosure • Creditors' Rights Litigation*
www.folksoconnor.com

This message is intended only for the use of the individual or entity to which it is addressed and may be protected by attorney-client privilege. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the sender of this e-mail or by telephone. Receipt of these materials does not in and of itself establish or indicate an attorney-client relationship with Folks & O'Connor, PLLC.

EXHIBIT F

1
2
3

OLADIRAN LAW, PC
Attorney at Law
26310 S. 116th Street
Chandler, AZ 85249
PHONE  602.486.8139
FAX  702.925.6660

4   Tajudeen O. Oladiran, Esq. (AZ Bar #021265)
    toladiran@oladiranlaw.com

5

6   Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

7                    DISTRICT OF ARIZONA

8

9   TAJUDEEN O. OLADIRAN, and          NO. 2:09-CV-01471- PHX-GMS
10  CHARLOTTE H. OLADIRAN, husband
    and wife,
11
                    Plaintiffs,
12                                      **PLAINTIFFS' RESPONSE TO**
        vs.                            **DEFENDANTS' MOTION TO ATTEND**
13                                      **CASE MANAGEMENT CONFERENCE**
14  SUNTRUST MORTGAGE, INC., a         **TELEPHONICALLY**
    Virginia corporation d/b/a/ CRESTAR
15  MORTGAGE, et. al.,
16                  Defendants.         Assigned to judge G Murray Snow

17  SUNTRUST MORTGAGE, INC., a
18  Virginia corporation d/b/a/ CRESTAR
    MORTGAGE,
19
20                  Counterclaimant,

21      vs.

22  TAJUDEEN O. OLADIRAN, and
    CHARLOTTE H. OLADIRAN, husband
23  and wife, et. al.

24
                    Counterdefendants.
25

26      As ordered by Judge G Murray Snow on February 24, 2010 (the "02/24/10

Order," Docket No. 72), this Response is filed by Tajudeen O. Oladiran, Esq. and Charlotte H. Oladiran (together, the "Oladirans" or "Plaintiffs"),[1] to answer questions raised by Judge Snow inn the 02/24/10 Order.

Q1)  Are Defendants' counsel correct is concluding that they are being threatened by Plaintiffs' counsel.

A1)  **No.**  Plaintiffs' counsel did not threaten Defendants' counsel.  When Plaintiffs' counsel stated in an e-mail that Defendants are playing Russian Roulette and would lose, Plaintiffs' counsel was noting the obvious, which is, the longer this case goes on, the greater the odds that Defendants' counsel, Larry Folks will slip up again (like he did in the examples below), and, this action will not always be adjudicated by Judges Bolton, Snow and Sedwick.  The defeats that Defendants have escaped, with help, are described below[2]:

(i)  Defendants received an unexplainable reprieve (for now) when, two days after a deponent (Suntrust Bank Chairman, Wells III) failed to show up for his Court ordered deposition, Judge Bolton inexplicably cancelled the depositions and failed to sanction the deponent or order the deponent to reimburse Plaintiffs for the costs incurred in planning and attending the deposition that was completely ignored by Defendants;

(ii)  Defendants received a second unexplainable reprieve when they cancelled their plans to foreclose the Deed on Plaintiffs' Property and, without giving Plaintiffs a chance to respond, Judge Bolton cancelled the scheduled Preliminary

---

[1] Capitalized terms not defined herein shall have the meanings assigned in Plaintiffs' "Amended Complaint," filed July 27, 2009 (*See* Case No. 2:09-CV-01471-GMS, at Docket No. 16).

[2] "Four e-mails exchanged between Plaintiffs' counsel and Defendants' counsel and/or John Clemency, Esq., dated February 18, 2010 through February 22, 2010, are attached hereto as Exhibits "1-4."

1   Injunction hearing that would have been held under a standard that is favorable to

2   Plaintiffs.[3]   At the scheduled preliminary injunction hearing, Plaintiffs would have been

3   required to prove, *inter alia*: "(1) [that] they are likely to succeed on the merits; and (2)

4   [that] they are likely to suffer irreparable harm in the absence of preliminary relief . . ."

5   *Id.*   In order to prove their case at the preliminary injunction hearing, Plaintiffs would

6   have had the latitude to show:

7

8       That, the Plaintiffs and millions of other borrowers, who allowed real estate

9       professionals to convince them to borrow more than they can afford, may be

        considered irresponsible, etc; however, their actions were imprudent, not

10      illegal.   Conversely, banks, like Suntrust, that knowingly or recklessly put

11      home buyers into more debt that they could repay, violated Government

12      Lending Standards and/or their own Internal Lending Standards in order to

13      make more loans, gain more market share, positively influence their stock

14      price, and increase the personal income of the bank executives.   Such acts

15      are <u>illegal</u> and, collectively, they add up to Predatory Lending and/or

16      violation of federal and state Racketeering laws.

17   **Instead, Judge Bolton: (i) cancelled the Wells III deposition after it was**

18   **ignored by Defendants; (ii) cancelled the deposition of the other Suntrust Executive;**

19   **and (iii) cancelled a preliminary injunction hearing favorable to Plaintiffs.   After**

20   **dealing Plaintiffs this severe blow, Judge Bolton recused herself from this law suit,**

21

22   ─────────────────

23   [3] The goal of a preliminary injunction hearing is to test the legal sufficiency of all of a
     Plaintiffs' claims:   "<u>**[P]laintiffs seeking a preliminary injunction must establish that**</u>

24   <u>**(1) they are likely to succeed on the merits**</u>; (2) they are likely to suffer irreparable harm
     in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) a

25   preliminary injunction is in the public interest."   *Sierra Forest Legacy et. al. v. Rey, 2009*,
     WL 2462216 at *3 (9th Cir. 2009) (emphasis added) (quoting *Winter v. Natural*

26   *Resources Defense Council, Inc.*, 129 S.Ct. 365, 374, 172 L.Ed.2d 249 (2008).

**leaving Plaintiffs to guess the impetus for her actions.**

Q2)   Should Defendants' counsel be allowed to attend the Case Management Conference telephonically?

A2)   **Yes.**   Although the claim by Plaintiffs' counsel that they are so afraid of Plaintiffs' counsel that they are afraid to come to Court is comical.   Based upon the history of this case, Plaintiffs' counsel knows that whatever Suntrust wants in this action, Suntrust gets.   Consequently, Plaintiffs respectfully decline the opportunity to lose another motion.

As shown by the e-mail exhibits, on February 18, 2010, Plaintiffs' counsel asked John Clemency and Defendants' counsel to explain Suntrust's relationship with John Clemency, Esq.   Although John Clemency responded on February 18, 2010, denying an improper relationship with Suntrust, Defendants' counsel took four (4) days to make the same denial.

To Plaintiffs' counsel, the delay in Defendants' counsel's response shows that Defendants' counsel were not sure whether they could get away with the same lie told by John Clemency.   Eventually, when Plaintiffs file suit against John Clemency and Suntrust, discovery will show that Suntrust did pay John Clemency to Sheppard this case to a cheap settlement.

To achieve that goal, John Clemency (and his minions) systematically began spreading rumors about Tajudeen Oladiran, Esq., including informing potential employers of Mr. Oladiran that he, John Clemency, believes that Tajudeen Oladiran, Esq., has lost his mind.   To further pollute the waters, John Clemency (and his minions) began flooding the Arizona law firms with the Plaintiff's Counsel's *Motion for A [sic] Honest and Honorable Court System*, without including the easily located Explanation and apology to Judge Bolton, written by Plaintiffs' counsel.

-4-

1    Defendants' counsel's current plan of making a mountain out of a mole hill.  That

2    is, their argument that because Plaintiffs' counsel mentioned Russian roulette, he must be

3    planning violence is a new low for an attorneys already practicing with reckless abandon

4    and without fear of reprisals.  For instance, Judge Snow's response to Defendants' ex

5    parte motion for telephonic appearance with a biased rendition of the "facts,"  and an

6    Order to Plaintiff to respond within 24 hours, is yet another example of the unfair

7    treatment that Plaintiffs are facing in this case.  However, as Plaintiffs' counsel reminded

8    John clemency on February 18, 2010, there is a God and, in Tajudeen Oladiran,

9    Defendants (and their hired help) have found their David.

10        SUBMITTED on February 25, 2010.

11

12                    OLADIRAN LAW PC
                     Attorney At Law
13

14                    By   /s/ Tajudeen O. Oladiran
                          Tajudeen O. Oladiran
15                    Attorney for Plaintiffs.

16   Original of the foregoing filed
     with the court electronically
17   on February 25, 2010,
     using the CM/ECF System for filing;
18
     and, a copy furnished electronically
19   or by mail to all CM/ECF registrants
     who have appeared in this proceeding,
20   as of February 25, 2010.

21

22   By: Tajudeen O. Oladiran

23

24

25

26

                              -5-

 **MAIL** *Classic*

**Re: Response to Your Voicemails of Yesterday and Today**        Thursday, February 18, 2010 1:04 PM

**From:** "Taj Oladiran" <tajoladiran@yahoo.com>
  **To:** " John R.Clemency" <john.clemency@gknet.com>

Mr. Clemency: The Holy Qur'an says:

> [2.144] We have seen you turning your face towards the heaven, We shall
> surely turn you to a direction that shall satisfy you. So turn your face towards
> the Sacred Mosque (built by Abraham); wherever you are, turn your faces to it.
> ' <u>Those to whom the Book was given know this to be the truth from their Lord.</u>
> <u>Allah is not inattentive of what they do.</u>

> [2.148] And for everyone is a direction for which he turns. So race in
> goodness. And wherever you are, Allah will bring you all together. <u>He has</u>
> <u>power over all things.</u>

> [2.149] From wherever you emerge, turn your face towards the Sacred
> Mosque. This is surely the truth from your Lord. <u>Allah is never inattentive of</u>
> <u>what you do.</u>

> [2.150] From wherever you emerge, turn your face towards the Sacred
> Mosque, and wherever you are, face towards it, <u>so that the people will have no</u>
> <u>argument against you, except the harm doers among them.</u> **Do not fear them,**
> **fear Me,** <u>so that I will perfect My Favor to you and that you will be guided.</u>

> [2.177] Righteousness is not whether you face towards the east or the west.
> But <u>righteousness is to believe in Allah and the Last Day</u>, in the angels and the
> Book, and <u>the Prophets, and to give wealth however cherished, to kinsmen</u>, to
> the orphans, to the needy, to the destitute traveler, and to the beggars, and to
> ransom the slave; who establish their prayers and pay the obligatory charity;
> who are true to their promise when they have promised. <u>Who are patient in</u>
> <u>misfortune and hardship and during the time of courage. Such are the truthful;</u>
> <u>such are the cautious.</u>

John: First, I do not believe you response.  Second, I have asked Larry Folks the same questions and I am
awaiting his response.  If I do not hear back from Mr. Folks, I will file the lawsuit described in the district Court
pleading you received as a cc.  Third, <u>I do not fear any of you and your purchased help</u>.  I will fight until
Allah gives me victory, even if it takes the rest of my life.

You and Mr. Folks (Suntrust) conspire to destroy me, at the same time you pretend to be my friend.  **May Allah**
**judge you and punish you with extreme prejudice.**  I tried to end this case even though I knew of the
corruption surrounding me; however, you and your co-conspirators will not leave me alone or let me leave or
live.  I repeat again:  <u>I do not fear any of you and your purchased help</u>; I will fight until Allah gives me
victory, even if it takes the rest of my life.

Taj

Tajudeen O. Oladiran, Esq.
Shareholder
OLADIRAN LAW, PC
26310 S. 116TH STREET

CHANDLER, AZ 85249
PHONE) 602-486-8139
FAX) 702-925-6660
toladiran@oladiranlaw.com
www.oladiranlaw.com
http://www.linkedin.com/in/taj4agofaz

The information contained in this transmission may contain privileged and/or confidential information. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. To reply to the sender directly, please send an email to Tajudeen.Oladiran@azbar.org

--- On **Thu, 2/18/10, Clemency, John R. <*john.clemency@gknet.com*>** wrote:

> From: Clemency, John R. <john.clemency@gknet.com>
> Subject: Response to Your Voicemails of Yesterday and Today
> To: tajoladiran@yahoo.com
> Date: Thursday, February 18, 2010, 11:25 AM
>
> Taj: I am responding to the voice mail that you left on my cell phone at approximately 10:30 pm yesterday and the voicemail that you left on my office phone of earlier today. In the voicemails, you stated that you needed answers to the following questions in order to satisfy "Rule 11 barriers" presumably in relation to the law suit that you threatened against me and my firm arising out of the mediation that I conducted at your request in connection with your litigation against Sun Trust Bank:
>
> 1.  Did I or do I have any contract with Sun Trust Bank?
>
> 2.  Have I received any money from Sun Trust Bank?
>
> 3.  Have I advised Sun Trust Bank in relation to your litigation with the bank?
>
> My answers to your questions are as follows:
>
> 1.  Other than the stipulation that you and Larry Folks signed and filed in the litigation, which requested a moratorium on the filing of pleadings while you and Sun Trust attempted to resolve your dispute through mediation, there is nothing between me and Sun Trust that would remotely give rise to a contractual relationship. In point of fact, I have never handled a matter for Sun Trust or otherwise provided any legal service whatsoever to Sun Trust in my entire legal career.
>
> 2. I did not receive anything (including money or other compensation) from Sun Trust (or from you for that matter) in relation to the mediation that I conducted at your request. Also, so there is no misunderstanding, I agreed to conduct the mediation at your request in my capacity as a member of the Arizona bar, and not in my capacity as an attorney with G&K.
>
> 3.  Based on my answer to your first question, my response to your final "Rule 11 Barrier" question is an unqualified no.
>
> Consequently, and based on the acknowledgement that you made in your voice mail of last evening to me, there is no way that you can meet "Rule 11 Barriers" if you choose to sue me for my willingness at

your request to try to help you settle your dispute with Sun Trust through mediation. Any attempt by you to include G&K in litigation arising out of the mediation would be even more sanctionable. In a world where all of us could use more friends, I regret that your threats are moving you from the ranks of a former colleague to the ranks of a former friend of mine.



**John R. Clemency**

Gallagher & Kennedy, P.A.
2575 E. Camelback Road
Suite 1100
Phoenix, Arizona 85016

Phone: 602-530-8040
Cell: 602-397-2533
Fax: 602-530-8500
E-mail: john.clemency@gknet.com
Web site: www.gknet.com

Attorney Profile

This message and any of the attached documents contain information from the law firm of Gallagher & Kennedy, P.A. that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information, and no privilege has been waived by your inadvertent receipt. If you have received this transmission in error, please notify the sender by reply e-mail and then delete this message. Thank you.